# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

| | |
|---|---|
| **MICHELE FAHEY,** *Plaintiff,* v. **KOLCUN TREE CARE, LLC and, JOHN DOES NOS. 1-10,** *Defendants.* | Civil Action No. *4:21-cv-00004-WTM-CLR* |

## PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DEFENDANT KOLCIN TREE CARE LLC'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff Michele Fahey, and hereby files this, Plaintiff's Brief in Support of Her Response in Opposition to Defendant Kolcun Tree Care, LLC's Motion for Summary Judgment, showing this honorable Court that Defendant's Motion must be denied for the following reasons:

## I. INTRODUCTION

This action arises out of a horse carriage crash that occurred in downtown Savannah, Georgia, on February 8, 2019. At the time of this incident, Plaintiff Michele Fahey was providing a horse-drawn carriage tour to tourists for Chinsegut Amusements (hereinafter "Chinsegut"). While giving this tour, Plaintiff passed a tree trimming crew of Defendant Kolcun Tree Care, LLC, (hereinafter "Kolcun Tree Care"). As the Plaintiff and tourists were passing the crew, the crew turned on a woodchipper and inserted debris into the woodchipper. This created an

extremely loud noise and caused the horse to take flight. Ultimately, the carriage crashed causing serious injuries to Michele Fahey and all other passengers. Ms. Fahey brought this action against Kolcun Tree Care and John Does Nos. 1-10 for negligence.

Kolcun Tree Care has filed a Motion for Summary Judgment citing Georgia's Injuries from Equine, Livestock and Llama Activities Act (hereinafter may be referred to as "the Act") and asking this Court to improperly extend the Act's reach to provide Kolcun Tree Care immunity from civil liability. For purposes of the present action, the relevant portions of this Act solely deal with Equine activities. This is a matter of statutory construction and legislative intent.

II. FACTS

Kolcun Tree Care, LLC is a tree services company owned by certified arborist Michael Kolcun. (Kolcun Depo. 15: 1-3, 19: 15-16) Kolcun Tree Care was formerly known as Allcare Tree Surgery. (Kolcun Depo. 19: 20-22, 22: 14-23) Michael Kolcun purchased the assets for Kolcun Tree Care in 2017. (Kolcun Depo. 19: 15-26, 22: 17-23)

On February 8, 2019, Michele Fahey was providing a horse-drawn carriage tour to tourists in Savannah, Georgia. (See generally Fahey Depo.) Ms. Fahey was an employee of Chinsegut Amusements doing business as Historic Savannah Carriage Tours. (hereinafter "Chinsegut") (Fahey Depo. 52: 5-25) Chinsegut is a company

that provides horse-drawn carriage tours in the City of Savannah. (See generally Fahey Depo.) Ms. Fahey had worked for Chinsegut for many years providing hundreds, maybe thousands, of tours and never had an accident operating a horse-drawn carriage before the subject tour. (Fahey Depo. 161 14-25, 162: 2-13) The horse Ms. Fahey was operating during the subject tour was named Freddie. (Fahey Depo. 169: 17-19) She operated Freddie more than a dozen times prior to the subject tour without incident and had no problems keeping him under control. (Fahey Depo. 169: 25, 171: 6-10)

During the subject tour, Michele Fahey took a route that went through Columbia Square past a Kolcun Tree Care tree trimming crew. (Fahey Depo. 201: 25, 202: 1-14, 238: 15-22) Michele Fahey did not know the Kolcun Tree Care crew was in Columbia Square prior to entering the Square. (Fahey Depo. 202: 3-5)

Kolcun Tree Care had a contract with the City of Savannah to provide tree care services and was pruning crape myrtles in Columbia Square pursuant to this contract. (Exhibit A, Kolcun Depo 61: 11-25, 62: 17-29, 72: 9-11) Kolcun Tree Care, LLC was not involved in any equine activity and was solely providing tree care services. (Exhibit A, Kolcun Depo 61: 11-25, 62: 17-29, 72: 9-11)

As Michele Fahey was taking the tour through Columbia Square, the Kolcun Tree Care crew utilized a woodchipper and other tree trimming equipment to help clean up debris from the job. (Fahey Depo. 238: 15-25, 239: 2-25, 240: 2-11) The

woodchipper and other equipment created a loud noise, startling the horse and causing it to take flight. (Fahey Depo. 240: 2-25) Eventually, the carriage crashed and turned over on its side injuring Michele Fahey and her passengers. (Fahey Depo. 9: 18-25, 242: 4-19, Exhibit B)

Marcos Rodriguez was the foreman for the Kolcun Tree Care crew. (See generally Rodriguez Depo.) He admits that woodchippers are loud without a branch being fed into it and louder when a branch is fed into it. (Rodriguez Depo. 41:17-22) He and his crew must wear ear protection when operating a woodchipper. (Rodriguez Depo. 39: 17-19) Mr. Rodriguez did not see the horse until it was already spooked and running. (Exhibit B, Rodriguez Depo. 33: 1-15) Nevertheless, he states that even if he saw a horse coming by his jobsite, he would still think it was okay to put a branch into the woodchipper. (Rodriguez Depo. 42: 10-14) Mr. Rodriguez would not, however, use a woodchipper if the jobsite was on a golf course near people playing golf. (Rodriguez Depo. 43: 11-17)

While performing a contracted job for the City of Savannah, Kolcun Tree Care must adhere to the standards and the practices the City of Savannah uses to perform tree pruning and removal. (Kolcun Depo 58: 22-25, 59: 1-3) Kolcun Tree Care also relies on the standards established in the International Society of Arboriculture, the Tree Care Industry Association, and the American National Standard for Arboriculture Operations (ANSI Z133) when performing a job.

(Kolcun Depo. 30:7-25, 31: 1-25, 32: 1-3) Despite being taught to always keep a look out for the jobsite, there was no crew member responsible for keeping a lookout for the jobsite on the date this incident occurred. (Rodriguez Depo. 32: 17-25) Marco Rodriguez does not remember whether signs were utilized to notify the public of the crew's presence and of a tree work zone. (Rodriguez Depo. 18: 19-21).

## III. SUMMARY JUDGMENT STANDARD

Summary Judgment may only be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that is relevant or necessary to the outcome of the lawsuit. Neary v. American Competitive Trail Horse Association, et al., 2020 WL 3268904. When determining whether a genuine dispute of material fact exists, the evidence is viewed in the light most favorable to the nonmoving part. Anderson v. Liberty Lobby, Inc. 477 U.S. 242. The moving party bears the initial burden of illustrating there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317. The nonmoving party does not need to produce evidence in a form that would be admissible at trial to defeat a motion for summary judgment. Id. The evidence presented simply needs to be the type of which a reasonable jury could find in favor of the nonmoving party. United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in

State of Ala., 941 F.2d 1428 (11th Cir. 1991). The drawing of legitimate inferences from the facts, credibility determinations, and the weighing of evidence are all jury functions. Id. "Accordingly, on summary judgment, 'the evidence of the non-movant is to be believed,'" and "the district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' and draw 'all justifiable inferences…in his favor.'" Id. at 1437. Summary judgment is not justified where a reasonable fact finder could draw more than one inference based on the facts and said inference would introduce a genuine issue of material fact. Id.

## IV.    CHOICE OF LAW

The Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C § 1332, which provides that federal district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum of $75,000 and is between citizens of different States. Federal courts sitting in diversity jurisdiction must apply federal procedural law, but state substantive law. Erie. V Tompkins, 304 U.S. 64 (1938); Hanna v. Plumer, 380 U.S. 460(1965); Bravo v. U.S., 577 F.3d 1324 (2009).  Federal courts sitting in diversity cases, are bound by state court decisions as well as state statutes. Hanna, 380 U.S. 460, 465.

Procedural law is "the judicial process for enforcing the rights and duties recognized by state substantive law and for justly administering remedy and redress for disregard or infraction of them." Id at 464. Substantive law is that law

which establishes the rights, duties, and responsibilities of the parties. Shady Grove Orthopedic Associates v. Allstate Ins. Co., 559 U.S. 393 (2009). Tanker Management, Inc. v. Brunson, 918 F.2d 1524 (1990); Nigeria National Petroleum Corporation, et al v. S/V Seabulk Merlin, et al., 410 F. Supp. 2d 1215(2005).

The incident which is the subject of this lawsuit occurred in Savannah, Georgia. The state of Georgia follows the rule *lex loci delicti*, thus, Georgia law controls the instant action in this matter. Mullins v. M.G.D. Graphics Systems Group, 867 F. Supp. 1578 (1994); Dowis v. Mud Slingers, Inc., 279 Ga. 808 (2005).

## V. ARGUMENTS AND CITATIONS OF AUTHORITY

### a. *Following the requirements of statutory construction reveals the Act does not apply to the present action*

"The cardinal rule in construing a legislative act is to ascertain the legislative intent and purpose in enacting the law." State of Georgia v. Free at Last Bail Bonds, 285 Ga. App. 734 (2007) (citing Carringer v. Rogers, 276 Ga. 359, 363 (2003)). Statutory construction requires a court to follow the literal language of the statute, however, when the literal language produces a contradiction or absurdity, a court must be faithful to the legislatures' intent when creating the statute. Georgia Power v. Monroe County, 284 Ga. App. 707, 709 (2007). In determining the legislative intent of a statute, the Court considers the purpose of the statute, its

impact on the body of law as a whole, and the issues sought to be corrected by creating the statute. Id. It is fundamental that a section of a statute should not be read in isolation but read with considering the context of the whole Act. Clifton v. Georgia Merit System, 478 F. Supp.2d 1356 (2007). Statutes "should be construed to make all of its parts harmonize and give sensible and intelligent effect to each part." Muller v. English, 221 Ga. App. 672 (citing Gilbert v. Richardson, 246 Ga. 744). A court should consider the entire scheme of the statute when making conflicting sections within the statute harmonize. SecureAlert, Inc. v. Boggs, 345 Ga. App. 812 (2018).

> 1. The Act does not apply to the present action as Kolcun Tree Care was not a party involved in the Equine Activity.

The Georgia Equine Activities Act can be found in O.C.G.A. Title 4 Chapter 12. The General Assembly assists us in understanding the legislative intent by explicitly providing its underlying intent within the language of the Act. Taylor v. Howren, 270 Ga. App. 226 (2004).

The Georgia General Assembly's intent is explained in O.C.G.A. § 4-12-1:

> "The General Assembly recognizes that persons who participate in equine activities, livestock activities, or llama activities may incur injuries as a result of the risks involved in such activities. The General Assembly also finds that the state and its citizens derive numerous economic and personal benefits from such activities. The General Assembly finds, determines, and declares that this chapter is necessary for the immediate preservation

> of the public peace, health, and safety. It is, therefore, the ***intent*** of the General Assembly to encourage equine activities, livestock activities, and llama activities by limiting the civil liability **of those *involved*** in such activities." (***Emphasis*** added)

O.C.G.A. § 4-12-1. It is clear the General Assembly sought to limit liability only to those that are involved in the equine activity. The purpose was to encourage opportunities for such activities and participation in such activities.

Kolcun Tree Care is a tree services company and is not involved in equine activities in any way. The date this carriage crash occurred; Kolcun Tree Care was pruning crape myrtles pursuant to a contract it had with the City of Savannah to provide tree care services. Kolcun Tree Care was not involved in any equine activity and was solely providing tree care services. As Ms. Fahey continued the tour past the Kolcun Tree Care crew, the crew utilized a woodchipper and other tree trimming equipment to help clean up debris from the jobsite. The woodchipper and other equipment created a loud noise, startling the horse and causing it to take flight. The supervisor of the crew admittedly did not see the horse coming by the crew's jobsite and did not have a person designated to keep a lookout for the jobsite. He only noticed the horse after it had been spooked.

## 2. Sections of the Act should not be read in isolation but in harmony with each other

Kolcun Tree Care omits the full intent of the legislature while relying on selective portions of the Act that, if read in isolation, fit its position. Particularly, Kolcun Tree Care cites O.C.G.A. § 4-12-3(a) which provides:

> "Except as provided in subsection (b) of this Code section, an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock professional, an owner of a livestock facility, a llama activity sponsor, a llama professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of animal activities and, except as provided in subsection (b) of this Code section, no participant or participant's representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock professional, an owner of a livestock facility, a llama activity sponsor, a llama professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of animal activities during the course of any equine activity, livestock activity, or llama activity.)"

O.C.G.A. § 4-12-3(a). Kolcun Tree Care relies specifically on the "catch-all" line "…or any other person, which shall include corporation or partnership…" Id. "[O]ther person" is not defined within the Act. O.C.G.A. § 4-12-2. Instead, the definitions provided within the Act center around those involved in equine

activities such as equine activity sponsors and equine professionals. O.C.G.A. § 4-12-2(5), O.C.G.A. § 4-12-2(6).

However, the Georgia Court of Appeals has analyzed the phrase "other persons" and did not read it in isolation, but in harmony with the legislative intent. Wiederkehr v. Brent, 248 Ga. App. 645. In Wiederkehr, the Court found owners of a horse that injured a rider enjoyed immunity from liability as "***other persons engaged in equine activities***." 248 Ga. App. 645, 646 (***Emphasis*** added).

If read in isolation, "other person" may seem to support Kolcun Tree Care's position. If read considering the context of the entire Act and in harmony with the legislative intent, it is clear the General Assembly meant "any other person, which shall include a corporation or partnership [involved in equine activities]. O.C.G.A. § 4-12-1, O.C.G.A. § 4-12-2, O.C.G.A. § 4-12-3. Wiederkehr, 248 Ga. App. 645, 646.

### b. *Georgia Courts have only applied the Act to defendants involved in Equine Activities.*

Wiederkehr is not the only case that limits the Act to those involved (engaged) in equine activities. Kolcun Tree Care misleads the Court in citing Gadd v. Warwick by claiming the legislature intended to create a broad immunity when creating the Act and wrongfully asserts the Act extends immunity to those not involved in such activities. Warwick, 339 Ga. App. 802 (2016) (citing Holcomb v.

Long, 329 Ga. App. 515 (2014)). A full reading of Holcomb reveals the Georgia Court of Appeals believed the General Assembly desired "creating broad immunity for equine professionals ***engaging*** in equine activities with narrowly defined exceptions." 329 Ga. App. 515, 520 (2014). (***Emphasis*** added). Furthermore, each of the cases Kolcun Tree Care cites to support its position involve defendants engaged in equine activities. Warwick, 339 Ga. App. 802, Holcomb, 329 Ga. App. 515, Young v. Brandt, 225 Ga. App. 889, Adams v. Hare, 244 Ga. App. 605, Muller v. English, 221. Ga. 672. The present case is clearly distinguishable as it is undisputed that Kolcun Tree Care was not involved in an equine activity.

    c. *Michele Fahey does not have the burden of showing her claims fit an exception to the Act as Kolcun Tree Care is not afforded immunity under the Act*

Kolcun Tree Care admits the party invoking immunity has the burden to show such immunity applies. DOT v. Balamo, 343 Ga. App. 169 (2017). Only then would the opposing party have the burden of showing the applications of exceptions to the immunity. Id.

Defendant contends that Michele Fahey has the burden of showing her claims fit an exception to the Act's provisions pursuant to O.C.G.A. § 4-12-3(b). However, Kolcun Tree Care is not entitled to immunity under the Act as immunity

is only afforded to those involved in equine activities. O.C.G.A. § 4-12-1, Wiederkehr, 248 Ga. App. 645, 646.

For O.C.G.A. § 4-12-3(b) to apply, Kolcun Tree Care must be a party afforded immunity under the Act. Since Kolcun Tree Care is not afforded immunity under the Act, Ms. Fahey does not have the burden of proving any exception to the Act.

> *d. The Act does not create assumption of the risk as a matter of law and Kolcun Tree Care has not provided evidence to meet the elements under traditional assumption of the risk standards*

"Assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." Taylor v. Howren, 270 Ga. App. 226, 228 (2004) (citing Beringause v. Fogleman Truck Lines, 200 Ga. App. 822 (1991)). Assumption of the risk is a jury question that should not be decided by summary adjudication unless it is conclusively established by plain, palpable, and undisputed evidence. Prillaman v. Sark, 255 Ga. App. 781 (2002). Although in at least one case Georgia courts have held a plaintiff assumed the risk, as a matter of law, for injuries that arose from the risk identified in O.C.G.A. § 4-12-2(7). Young v. Brandt, 225 Ga. App. 889 (1997). The Courts did not create a new blanket standard for assumption of the risk and the individual facts surrounding the incident causing injury must still be analyzed. Taylor, 270 Ga. App. 226 (2004). In

Taylor, the plaintiff was injured after being thrown from a horse. Id. Even though the injury was from the type of risk covered under O.C.G.A. § 4-12-2(7), the Court held there was a genuine issue of material fact as to whether the owner of the horse misrepresented the domesticity of the horse to the injured rider. Id.

Here, again, the facts surround a defendant that is not involved in equine activities but is a tree trimming service company. Ms. Fahey had worked for Chinsegut for many years providing hundreds, maybe thousands, of horse-drawn carriage tours. She never had an accident operating a horse-drawn carriage before the subject incident and she had no problems keeping the subject horse under control in the more than twelve previous times she operated him.

During the subject tour, Michele Fahey took a route that went through Columbia Square past the Kolcun Tree Care tree trimming crew. She did not know the Kolcun Tree Care crew was in Columbia Square prior to entering the Square. There is no evidence the crew made its presence known to the public as the supervisor could not confirm signs were placed to notify the public. Furthermore, even though the crew is taught to always have someone designated to keep a lookout for the jobsite, the tree trimming crew admittedly did not have someone tasked to handle that job.

Without any warning, the crew turned on and utilized a woodchipper and other tree trimming equipment as the horse-drawn carriage was passing by. The

supervisor for the tree trimming crew admits the woodchipper is loud and that all crew members must wear ear protection when it is being used. The noise spooked the horse causing it to take flight and the carriage ultimately crashed. It is clear, from these undisputed facts, Ms. Fahey did not assume the risk of her injury.

## VI. CONCLUSION

The evidence in this matter establishes that Georgia's Injuries from Equine Activities Act does not apply to the present action and Ms. Fahey did not assume the risk of her injuries.

The legislature's intent behind creating the Act is to limit civil liability to those involved in the equine activity. Kolcun Tree Care is a tree services company and is not, especially at the time of this incident, involved in equine activities. Thus, the Act does not extend to Kolcun Tree Care.

Georgia Courts have only applied the Act to those involved in equine activities. Kolcun Tree Care desperately refers to Ms. Fahey's employer, Chinsegut, using the Act as a defense in a separate lawsuit that arose out of the same horse carriage incident. However, Chinsegut was involved in the equine activity at issue by providing the horse-drawn carriage and the tour. Kolcun Tree Care fails to realize this important distinction between it and Chinsegut. For this Court to extend the Act to cover those not involved in equine activities would be improper.

It is also clear that Ms. Fahey did not assume the risk of injury. She had conducted hundreds if not thousands of horse-drawn carriage tours without incident, the horse she operated was well suited for horse-drawn carriage tours, and she did not have full knowledge of the presence of the tree trimming crew prior to entering the subject square.

For the foregoing reasons, Defendant Kolcun Tree Care is not entitled to Summary Judgment and thus, its motion must be denied.

This the 5th day of July, 2022.

 

THE DOZIER LAW FIRM, LLC

/s/ Dustin W. Hamilton
Dustin W. Hamilton
Georgia Bar No. 825725
*Attorney for Plaintiff*

401 Mall Blvd. Suite 103-E
Savannah, GA 31406
Tel: 912-239-4395
Fax: 912-239-4401
dustin@dozierlaw.com