IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MICHELE FAHEY,<br><br>    Plaintiff,<br><br>  v.<br><br>KOLCUN TREE CARE, LLC and, JOHN DOES NOS. 1-10.,<br><br>    Defendants. | CIVIL ACTION NO.: 4:21-cv-00004 |

**O R D E R**

Presently before the Court is Defendant Kolcun Tree Care, LLC's ("Kolcun" or "Defendant") Motion for Summary Judgment. (Doc. 36.) This lawsuit arises from injuries Plaintiff Michele Fahey sustained while conducting a horse-drawn carriage tour through downtown Savannah. (See generally doc. 7.) Plaintiff alleges that the horse pulling the carriage she was driving became startled by the noise coming from Defendant's tree trimming crew, began to run, and crashed into a curb, causing the carriage to flip over. Plaintiff brought suit alleging that her injuries were caused by Defendant's negligence.[1] (Id. at p. 2.) Defendant filed the at-

---

[1] Plaintiff also named "John Does NOS. 1–10" (the "John Doe Defendants") as defendants in this matter. (See doc. 7.) In general, "fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Although there is a limited exception for "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" id. (quoting Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992)), it is inapplicable here. The only allegations in the Amended Complaint concerning the identity of the John Doe Defendants are that he/she "was an employee of Kolcun . . . acting within the scope and course of his/her employment with Kolcun" at all relevant times. (Doc. 7, pp. 1–2.) These allegations are insufficient to identify any John Doe Defendants. Since the real defendant or defendants "cannot be readily identified for service" from this description, the presence of the fictitiously named John Doe Defendants is "insufficient to sustain a cause of action." Williams v. DeKalb Cnty. Jail, 638 Fed. App'x 976, 977 (11th Cir. 2016) (per curiam). "Because they are not proper parties to this action, the Court disregards the John Doe Defendants and will not address them again." Roberts v. Phila. Express Tr., No. 4:20-cv-236, 2021 WL 3924067, at *1 n.1 (S.D. Ga. Sept. 1, 2021).

issue Motion, arguing that Plaintiff cannot recover pursuant to Georgia's Injuries from Equine, Livestock, or Llama Activities Act, O.C.G.A. § 4-12-1 *et seq* (at times, the "Act"). (Docs. 36, 37.) The Motion has been fully briefed. (Docs. 37, 46, 52, 54.) For the reasons stated below, the Court **GRANTS** the Motion. (Doc. 36.)

## BACKGROUND

The following facts are undisputed. On February 8, 2019, Plaintiff was providing a horse-drawn carriage tour in downtown Savannah. (Doc. 45, pp. 1–2.) During the tour in question, the horse pulling Plaintiff's carriage was startled by a loud noise created when one of Defendant's tree-cutting crews used a woodchipper and other equipment to trim trees in the area. (Id. at p. 2.) Once startled, the horse began to run, and Plaintiff lost control of the carriage. (Id.) At that point, the carriage collided with bushes and a curb, causing it to flip onto its side. (Id. at p. 5.) As a result of the incident, Plaintiff sustained serious bodily injuries. (Id. at p. 2.)

Plaintiff brought this suit on January 11, 2021, (doc. 1 (original Complaint)), alleging that her injuries were caused by Defendant's negligence, including its failure to train its employees to refrain from using wood cutting and chipping equipment when horses were in close proximity, (doc. 7 (Amended Complaint)). The parties engaged in discovery, and Defendant filed the at-issue Motion for Summary Judgment, (doc. 36), arguing, *inter alia*, that (1) it cannot be held liable for Plaintiff's injuries under the Act, and (2) the Act actually prohibits Plaintiff from maintaining an action against it, (doc. 37, pp. 9–12). The Motion is fully briefed and ripe for review. (See docs. 37, 46, 52, 54.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). Thus, the Court will view the record and all reasonable inferences that can be drawn therefrom in Plaintiff's favor. However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will

3

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

## DISCUSSION

**I.   Georgia's Injuries from Equine, Livestock, or Llama Activities Act, O.C.G.A. § 4-12-1 *et seq*.**

The parties agree that Georgia law controls the instant matter because Plaintiff's accident occurred in Georgia, which follows the traditional rule of *lex loci delicti*. (Doc. 37, p. 5; doc. 46, p. 7); see Dowis v. Mud Slingers, Inc., 621 S.E.2d 413, 414–19 (Ga. 2005) (holding that Georgia follows *lex loci delicti*, under which "a tort action is governed by the substantive law of the state where the tort was committed"). Georgia's Injuries from Equine, Livestock, or Llama Activities Act provides immunity from liability for injuries resulting from the inherent risks of participating in equine, livestock, and llama activities. O.C.G.A. § 4-12-1 *et seq*. Section 4-12-3(a) of the Act provides two forms of immunity. First, it prohibits liability "for an injury to or the death of a participant resulting from the inherent risks of animal activities." O.C.G.A. § 4-12-3(a). Second, it prohibits a participant from asserting a claim or recovering "for injury, loss, damage, or death of the participant resulting from any of the inherent risks of animal activities during the course of any equine activity, livestock activity, or llama activity." Id. To qualify for immunity under Section 4-12-3(a), the defendant must be "an equine activity sponsor, an equine professional, a livestock activity sponsor, a livestock professional, an owner of a livestock facility, a llama activity sponsor, a llama professional, or *any other person,* which shall include a corporation or partnership." Id. (emphasis added).

**II.   The Parties' Arguments**

Defendant argues that summary judgment is warranted because it is entitled to both forms of immunity provided by the Act. (See doc. 37, pp. 9–12.) Specifically, Defendant contends that

4

it cannot be held liable to Plaintiff for her injuries under Section 4-12-3(a) because "Plaintiff was clearly a participant who was engaging in an equine activity at the time of the accident at issue in this case," and her "alleged injuries clearly resulted from the inherent risks of animal activities." (Id. at p. 9.)  Additionally, Defendant argues that the Act precludes Plaintiff from maintaining an action against it for the reasons stated above *and* because Plaintiff was injured while driving and/or pulling a carriage, and, thus, "during the course of an equine activity." (Id. at pp. 11–12 (noting that "[t]he only additional element required to bar the Plaintiff's claims against Defendant . . . under this part of the Act is to show that the horse-carriage accident happened 'during the course of an equine activity'").); see O.C.G.A. § 4-12-3(a).  Lastly, Defendant argues that none of Section 4-12-3(b)'s exceptions apply.[2]  (Doc. 37, pp. 12–15.)

Plaintiff does not dispute that she was a "participant" under the Act or that her injuries resulted from the "inherent risks of animal activities during the course of an[] equine activity." O.C.G.A. § 4-12-3(a); (see generally docs. 46, 54).  Indeed, the undisputed facts establish that these elements are met.[3]  Furthermore, Plaintiff does not argue or present any evidence suggesting

---

[2] Section 4-12-3(b) provides certain exceptions to the immunity offered in Section 4-12-3(a).  See O.C.G.A. § 4-12-3(b).

[3] Plaintiff admits that she was driving a horse-drawn carriage when she was injured. (Doc. 45, pp. 4–5.) Thus, she qualifies as a "participant." See O.C.G.A § 4-12-2 (defining "participant" as "any person . . . who engages in an equine activity," which means, *inter alia*, "riding, . . . driving, or being a passenger upon an equine, whether mounted or unmounted"). Furthermore, Plaintiff admits that she was injured when the horse pulling the carriage she was driving got startled by the loud noise created by Defendant's tree-trimming crew and began to run, causing her to lose control of the carriage and, ultimately, crash into a curb and bush. (Doc. 45, pp. 2, 5.) Therefore, her injuries resulted from the "inherent risks of animal activities." See O.C.G.A. § 4-12-2(7) (defining "inherent risks of animal activities" to include the "propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them," the "unpredictability of the animal's reaction to such things as sound, sudden movement, and unfamiliar objects, persons, or other animals," and "[c]ollisions with other . . . objects"). Based on the same facts, Plaintiff's injuries occurred "during the course of an equine activity." O.C.G.A. § 4-12-2(4) (defining "equine activity" to include "[r]iding . . . an equine belonging to another" and "[e]quine . . . performances," such as "driving [and] pulling").

5

that Section 4-12-3(b)'s immunity exceptions apply to her claims.[4]  (See generally id.) Nonetheless, she maintains that Defendant is not entitled to immunity under the Act because Defendant "was not a party involved in the [e]quine [a]ctivity." (Doc. 46, p. 8.) According to Plaintiff, it is clear from the Act's legislative intent provision, Section 4-12-1, that the General Assembly "sought to limit liability only to those that are involved in the equine activity." (Id. at p. 9 (citing O.C.G.A. § 4-12-1, which states, "It is . . . the intent of the General Assembly to encourage equine activities . . . by limiting the civil liability of those involved in such activities).) Additionally, Plaintiff argues that the "catch-all" phrase "any other person" contained in Section 4-12-3(a)'s list of immune persons should be read in harmony with the legislative intent and the entire Act. (Id. at pp. 10–11.) According to Plaintiff, "it is clear the General Assembly meant 'any other person, which shall include a corporation or partnership *[involved in equine activities]*.'" (Id. at p. 11 (emphasis in original).)  Therefore, Plaintiff contends, since Defendant "is a tree services company [that] is not involved in equine activities in any way," it is not entitled to Section 4-12-3(a)'s protections. (Id. at p. 9; see id. at pp. 7–12.) Finally, Plaintiff argues that the Act "does not create assumption of the risk as a matter of law and [Defendant] has not provided evidence to meet the elements under the traditional assumption of the risk standards." (Id. at p. 13.)

For the reasons described more fully below, the Court finds that the phrase "any other person" is clear and unambiguous, and that Defendant is eligible for immunity under that category. Accordingly, since the other elements of immunity under Section 4-12-3(a) are met, see Discussion Section II, note 3, supra, the Act prohibits Defendant from being held liable for Plaintiff's injuries. Moreover, because Defendant seeks immunity under the Act, it need not prove the traditional

---

[4]  Indeed, none of the evidence presented in this case suggests that any of Section 4-12-3(b)'s exceptions are applicable.

elements of assumption of risk, and, even if it did, Plaintiff is deemed to have assumed the risk because her injuries resulted from engaging in the inherent dangers of animal activities. Thus, summary judgment in favor of Defendant is warranted based upon the Act.

**III.  Defendant is Eligible for Immunity Under Section 4-12-3(a)'s "Any Other Person" Category**

    **A.  The Court Need Not Consult Section 4-12-1 to Interpret the Phrase "Any Other Person" because the Phrase is Unambiguous and Plainly Applies to Defendant.**

As noted above, although the Act provides immunity to certain enumerated persons, such as an "equine activity sponsor" and "an equine professional," it also protects "any other person, which . . . include[s] a corporation or partnership." O.C.G.A. § 4-12-3(a). Defendant argues that the phrase "any other person" is unambiguous and, therefore, the Court need not consult legislative intent to discern its plain meaning. (See doc. 52, pp. 7–9.) Plaintiff does not argue that "any other person" is ambiguous. (See generally docs. 46, 54.) Nonetheless, she insists that the Court must consult the legislative intent to determine its meaning and read it in a way that is consistent with the Act as a whole. (See doc. 46, pp.7–12; see also doc. 54, p. 3.)

Plaintiff is incorrect. "A statute draws its meaning, of course, from its text." Dubois v. Brantley, 775 S.E.2d 512, 516 (Ga. 2015). Although courts may review "the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, [courts] attribute to the statute its plain meaning, and [the court's] search for statutory meaning ends." Amazing Amusements Grp., Inc. v. Wilson, 835 S.E.2d 781, 783 (Ga. Ct. App. 2019); see Catoosa Cnty. v. Rome News Media, LLC, 825 S.E.2d 507, 511 (Ga. Ct. App. 2019) ("[W]hen the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.") (internal quotations omitted). Here, the phrase "any other person" is unambiguous

7

because it is susceptible to only "one natural and reasonable interpretation." Gottschalk v. Woods, 766 S.E.2d 130, 136 (Ga. Ct. App. 2014). In fact, Plaintiff concedes that, when viewed in isolation (i.e., without regard to legislative intent), Defendant may be eligible for immunity as "any other person." (See doc. 46, p. 11 ("If read in isolation, 'other person' may seem to support [Defendant's] position.").) Accordingly, because the statutory text is "clear and unambiguous," the Court need not inquire further into legislative intent and instead will attribute the phrase its plain and ordinary meaning. Wilson, 835 S.E.2d at 783.

Although Section 4-12-3(a) provides that a "person . . . shall include a corporation," neither the phrase "any other person" nor the terms comprising the phrase are specially defined in the Act. O.C.G.A. § 4-12-3(a); cf. O.C.G.A. § 4-12-2 (defining "equine activity sponsor," "equine professional," and the other types of immune persons listed in Section 4-12-3(a)). "Except when considering a technical term or term of art in a particular industry, Georgia courts often begin by considering how a[n] [undefined] word has been defined in dictionaries to determine its plain and ordinary meaning." Rome News Media, 825 S.E.2d at 512; see id. at 512 n.17 (collecting Georgia cases relying upon dictionary definitions to determine the plain or ordinary meaning of an undefined term). Merriam-Webster defines the word "any" as "every" or "one or some indiscriminately *of whatever kind*," *Any*, Merriam-Webster's Dictionary (emphasis added), and the word "other" as "different" or "distinct from . . . those first mentioned or implied," *Other*, Merriam-Webster's Dictionary. Similarly, the Oxford English Dictionary defines "any" as "of whatever sort or kind," *Any*, Oxford English Dictionary, and the word "other" as "different in kind, nature, or quality" or "[s]eparate or distinct from that or those already specified or implied," *Other*, Oxford English Dictionary. Plainly then, "any other person" means "every other corporation" or "every corporation that is distinct from those first mentioned." Read in context, this means "every

8

corporation that is distinct from the categories of immune persons listed in Section 4-12-3(a)." See O.C.G.A § 4-12-(a). Unquestionably, then, Defendant qualifies as "any other person."

Plaintiff, in essence, asks the Court to *rewrite* the Act so that it, in her view, better aligns with the legislature's statement in Section 4-12-1 that it intended "to encourage equine activities . . . by limiting the civil liability of those involved in such activities." O.C.G.A. § 4-12-1. However, it is fundamental that courts "presume that the General Assembly meant what it said and said what it meant." Patton v. Vanterpool, 806 S.E.2d 493, 495 (Ga. 2017). As Defendant aptly states, if the legislature "truly intended to limit [the Act] in the fashion advanced by the Plaintiff, the General Assembly could have done so . . . by adding the language 'involved in equine, livestock or llama activities' to the phrase 'any other person' both times the phrase is used in [Section 4-12-3(a)]." (Doc. 52, p. 8.) Indeed, notably, the legislature incorporated a similar phrase—"engaged in equine activities"—in the definition of "participant" in Section 4-12-1(12). See O.C.G.A. § 4-12-1(12). However, the legislature failed to, or elected not to, include this language in Section 4-12-3. Thus, regardless of whether the legislature intended to limit the application to those involved in equine activities, it did not.

**B.     Plaintiff's Reliance on Wiederkehr v. Brent is Misplaced.**

Notwithstanding, Plaintiff maintains that the Georgia Court of Appeals' decision in Wiederkehr v. Brent, 548 S.E.2d 402 (Ga. Ct. App. 2001), establishes that "any other person" must not be interpreted in isolation. (Doc. 46, p. 11.) According to Plaintiff, Wiederkehr read "any other person" in harmony with the legislative intent expressed in Section 4-12-1 when it held that the "owners of a horse that injured a rider enjoyed immunity from liability as 'other persons engaged in equine activities.'" (Id. (emphasis removed) (quoting Wiederkehr, 548 S.E.2d at 404).) Plaintiff misreads Wiederkehr. In that case, the plaintiff was injured when a horse reared back and

fell on him, and the plaintiff sued the horse's owner and the owner of the stable where the horse was boarded. Wiederkehr, 548 S.E.2d at 403. The trial court determined that defendants were immune under the Act as "other persons." Id. On appeal, the Georgia Court of Appeals affirmed, agreeing that the defendants "enjoyed immunity from any liability for Wiederkehr's injuries as 'other persons' *engaged in equine activities*." Id. at 404 (emphasis added). However, in reaching this decision, the Wiederkehr court did not analyze the scope or meaning of "any other person," much less conclude that the phrase was applicable only to defendants involved in equine activities. See id. Rather, the Court merely found that the defendants' failure to post a warning that they were immune from liability—as required of "every equine professional and every equine activity sponsor" by Section 4-12-4—did not strip them of immunity.[5] Id. The Court reasoned that, on its face, Section 4-12-4's duty to warn applies to "equine activity sponsors and equine professionals," but it "does not extend to 'other persons' *engaged in equine activities*." Id. at 404 (emphasis added). Thus, "[o]ther person immunity from liability is complete notwithstanding the failure to warn of the same." Id. Viewed in its proper context, it is clear that the court added the phrase "engaged in equine activities" in passing; it did not, as Plaintiff suggests, read "any other person" in Section 4-12-3 more narrowly to mean "any other person *engaged in equine activities*" in order to harmonize it with the General Assembly's intent. In fact, the Wiederkehr Court did not reference Section 4-12-1 or even mention legislative intent.[6] Regardless, the Court rejects Plaintiff's argument that Wiederkehr establishes that the Georgia Court of Appeals has "followed

---

[5] Section 4-12-4 provides that "an equine activity sponsor or equine professional" may not invoke immunity under the Act unless they post and maintain a sign warning that they are not liable for injuries stemming from the inherent risk of animal activities. O.C.G.A. § 4-12-4.

[6] Even if the Wiederkehr court had gone further in its discussion and analysis, its statement would be nothing more than dicta, since it was not necessary for the Wiederkehr court to determine whether the Act only provides immunity to other people if and when they are engaged or involved in equine activities.

10

the intent of the legislature and interpreted that statute" to provide immunity solely to persons "engaged in equine activities."[7] (Doc. 54, p. 5.)

### B.     The Remaining State Court Cases Plaintiff Cites Are Inapposite

Plaintiff next argues that Georgia courts have only applied the Act to defendants involved in equine activities,[8] and the present case is "clearly distinguishable as it is undisputed that [Defendant] was not involved in an equine activity." (Doc. 46, pp. 11–12.) Yet, the fact that the defendants in those prior cases were, according to Plaintiff, engaged in equine activities is inapposite. None of these cases actually addresses the issue in this case: whether, despite the clear and broad language used in the statute (i.e., immunity is available to "any other person"), immunity is in fact only available to defendants involved in equine activities because Section 4-12-1 states that is who the legislature sought to protect. Nor do these cases address whether the given defendant qualified as "any other person" or fell within one of the other the categories of immune persons listed in Section 4-12-3(a). Instead, they focus on the remaining elements of Section 4-12-3(a), such as whether the plaintiff's alleged injuries were the result of the inherent risks of animal activities or occurred during the course of an equine activity. In the case at hand, however, the undisputed facts show that Plaintiff was injured while participating in equine activities and that her injuries were the result of the inherent risks of animal activities. See Discussion Section II, note 3, supra. Furthermore, one of the cases Plaintiff cites, Adams v. Hare, 536 S.E.2d 284 (Ga. Ct. App. 2000), cuts against her position. (See doc. 46, p. 12.) In Adams, the Georgia Court of

---

[7] The Court notes that, whereas Section 4-12-1 states that the legislature intended to limit the civil liability "of those *involved* in [equine activities]," O.C.G.A. § 4-12-1 (emphasis added), Wiederkehr uses a *different* term—"*engaged*," 548 S.E.2d at 404. The fact that the court used different terminology cuts against Plaintiff's argument that the court intended to narrow the "any other person" category to accord with Section 4-12-1.

[8] Notably, Plaintiff has not pointed to a single case where a Georgia court refused to apply the Act to a defendant not involved in equine activities.

11

Appeals italicized "any other person" when reproducing Section 4-12-3(a), seemingly to emphasize the broad scope of the immunity it affords. See 536 S.E.2d at 287. Tellingly, despite quoting Section 4-12-1's statement of intent in its entirety in the following sentence, the court did not state or suggest that, in light of said intent, "any other person" must be read more narrowly or that the Act's protections should not be afforded to defendants unless they were engaged in equine activities. Id.

Nonetheless, Plaintiff contends that Holcomb v. Long, 765 S.E.2d 687 (Ga. Ct. App. 2014), "further supports [that] the Act only applies to those involved in equine activities." (Doc. 54, p. 5.) Specifically, Plaintiff cites Holcomb's statement that the General Assembly sought to create "broad immunity for equine professionals engaging in equine activities." (Id. (quoting Holcomb, 765 S.E.2d at 691).) Plaintiff cherry-picks this language to support limiting the Act's protections in a manner that Holcomb clearly did not intend. Like Wiederkehr, Holcomb did not consider whether the defendant qualified as "any other person" nor did it attempt to define that phrase; rather, the court analyzed whether Section 4-12-3(b)(1)(A)'s immunity *exception* for persons who provide faulty equipment or "tack" applied to the defendant. 765 S.E.2d at 690–91. The court determined that the exception was inapplicable, reasoning that construing the exception in the manner sought by the plaintiff would "run afoul of the General Assembly's expressed desire of creating broad immunity for equine professionals *engaging in equine activities* with narrowly defined exceptions." Id. at 691 (emphasis added). Clearly, the court's reference to legislative intent was intended to convey the breadth of immunity afforded by the Act, not to create a hardline rule limiting immunity. In fact, the court explicitly stated that Section 4-12-3(a)'s immunity is "general[ly] applicab[le]." Id. Thus, Holcomb's description of the General Assembly's intent does not support limiting immunity in the manner Plaintiff seeks.

12

Plaintiff also argues that Holcomb shows that "whether [Defendant] was involved in the subject equine activity is a material element to whether the Act applies" because the court "analyz[ed] the parties involved." (Doc. 54, p. 6.) Specifically, Plaintiff cites Holcomb's statement that, "[i]n the case *sub judice*, there is no dispute that the parties were engaged in 'equine activities' as defined by the statute, or that Holcomb was a 'participant' in such activities." (Id. (citing Holcomb, 765 S.E.2d at 690–91).) This lone statement does not establish that defendants *must* be engaged in equine activities—a requirement found nowhere in the text of Section 4-12-3(a)—to be protected by the Act. Indeed, Holcomb never stated (or remotely implied) that it was creating a new "material element" for entitlement to immunity under Section 4-12-3(a). Furthermore, it is unsurprising that the court recognized that the parties were "engaged in equine activities"; Section 4-12-3(a)'s immunity applies only to injuries suffered by a "participant," which includes a "person . . . who *engages in an equine activity.*" O.C.G.A. § 4-12-2(12). Thus, Holcomb *had* to consider whether the plaintiff was engaged in equine activities, and the fact that it grouped in the defendant when doing so does not, as Plaintiff suggests, have any bearing on Defendant's status as "any other person" or its entitlement to immunity more generally.

## IV.    Assumption of Risk

Lastly, Plaintiff contends that summary judgment is unwarranted because Defendant has failed to "provide[] evidence to meet the elements under the traditional assumption of risk standards." (Doc. 46, p. 13.) According to Plaintiff, the Act "does not create assumption of risk as a matter of law," and, therefore, Defendant must satisfy the traditional elements of assumption or risk. (Id. at p. 13.) That is incorrect. Defendant has not sought summary judgment based upon the traditional assumption of risk defense. (See generally docs. 36, 37.) Section 4-12-3 does not require a defendant to prove or supply evidence that the plaintiff assumed the risk in order to be

13

entitled to immunity, and Plaintiff has failed to cite any case law suggesting that is the case. (See generally docs. 46, 54.) Furthermore, in Young v. Brandt, the Georgia Court of Appeals noted that, in enacting the Act, "[t]he General Assembly . . . recognized that as a matter of public policy, those who engage in equine activities may incur injuries as a result of the well-known risks associated with those activities and has defined specifically those inherent risks in O.C.G.A. § 4-12-2(7)." 485 S.E.2d 519, 522 (Ga. Ct. App. 1997). Thus, Young found, "when injuries have arisen from risks identified in [Section 4-12-2(7)], in most cases, the plaintiff should be found to have assumed the risk, as a matter of law."[9] Id.

Plaintiff does not dispute that her injuries arose from the "inherent risks of animal activities" set forth in Section 4-12-2(7), including "[t]he unpredictability of the animal's reaction to . . . sounds" and "[c]ollisions with other . . . objects." O.C.G.A. § 4-12-2(7). (See generally docs. 46, 54.) Indeed, as discussed in note 3, supra, the undisputed facts show that this element is met because Plaintiff's injuries occurred when the horse pulling her carriage was startled by the noise coming from Defendant's tree cutting crew, began to run, and collided with a curb and bush, causing the carriage to flip over. Thus, even if Defendant *had* sought summary judgment based upon assumption of the risk, Plaintiff likely would be, under the reasoning of Young, deemed to have assumed the risk because her injuries were the result of the inherent risks of animal activities.

---

[9] In Taylor v. Howren, the Georgia Court of Appeals recognized an exception to Young's general rule because there was "a question of fact whether the provider of the horse misrepresented its nature to the rider." 606 S.E.2d 74, 76–77 (Ga. Ct. App. 2004). Specifically, the Court found that the plaintiff could not be found to have assumed the risk because she did not exercise "a free and knowing choice to engage in the dangerous act of riding a horse that had not been fully trained." Id. at 76. This exception is inapplicable to the facts of this case, and, thus, to the extent Plaintiff attempts to rely upon Taylor, the Court is not persuaded. (See doc. 46, pp. 13–14.)

## CONCLUSION

In sum, based on the forgoing, Defendant Kolcun Tree Care, LLC is entitled to immunity from liability for Plaintiff Michele Fahey's injuries and claims pursuant to Section 4-12-3(a) of the Act. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, (doc. 36), and the claims asserted in Plaintiff's Complaint are **DISMISSED**. The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** the case.

**SO ORDERED**, this 2nd day of December, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA